IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRANDON SAGO, # R-59245, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 18-cv-00160-SMY |
| | ) |
| JACQUELINE LASHBROOK, | ) |
| DR. TROST, | ) |
| DR. RITZ, | ) |
| R. MATTICKS, | ) |
| HOLLY HAWKIN, | ) |
| KELLY PIERCE, | ) |
| DR. SIDDIQUI, | ) |
| JANE DOE ##1-3, | ) |
| JOHN DOE ##1-3 and | ) |
| WEXFORD, INC., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Brandon Sago, an inmate who is currently incarcerated at Menard Correctional Center ("Menard"), brings this action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights at Menard.[1] According to the Complaint, Plaintiff has been denied medical treatment for injuries that resulted from an old gunshot wound in his left arm. (Doc. 1, pp. 1-11). Plaintiff now sues the defendants for violating his Eighth Amendment right to be free from cruel and unusual punishment. (Doc. 1, p. 11). He seeks declaratory judgment, monetary damages and injunctive relief. (Doc. 1, p. 12). Plaintiff also requests a preliminary injunction requiring the defendants to send him to an outside specialist for further evaluation and treatment. *Id*.

---

[1] At the time he filed his Complaint, Plaintiff did not pay a filing fee for this action or submit a complete application to proceed *in forma pauperis* ("IFP"). (Doc. 1, p. 16). On February 1, 2018, the Clerk of this Court advised Plaintiff of his obligation to prepay the full $400.00 fee or file an IFP motion. (Doc. 2). He was warned that failure to fulfill this obligation within 30 days would result in dismissal of the action. *Id*. Plaintiff responded by filing an IFP motion on February 26, 2018. (Docs. 3, 5).

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> >
> > (2) seeks monetary relief from a defendant who is immune from such relief.

*Id*.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations in the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff alleges that the defendants have denied him medical care for an old gunshot wound in his left arm since 2014. (Doc. 1, pp. 1-11). A bony protrusion from Plaintiff's left elbow has allegedly caused nerve damage and pain that requires surgery. *Id*. Because surgery

has been denied, Plaintiff's condition has deteriorated. *Id*. He suffers from numbness, pain and loss of movement in his left arm, hand and fingers. *Id*.

Plaintiff first requested treatment for the injury when he arrived at Menard on March 27, 2014. (Doc. 1, p. 4). Despite his complaints of serious pain at that time, Plaintiff was not seen by a nurse or doctor until June or July. *Id*. When he finally met with an unknown nurse ("Nurse Jane Doe 1"), Plaintiff told her about his 2011 gunshot wound. *Id*. He stated that the injury never healed properly, and a "big piece of bone" still protruded from his elbow. *Id*. He reported that it not only caused nerve damage and pain that prevented him from sleeping and exercising, but it also prevented him from straightening his arm. *Id*.

After examining Plaintiff, Nurse Doe 1 said that she could do nothing for him. *Id*. She stated that he needed surgery. *Id*. However, she would not refer him to an outside specialist or hospital because his injury was not life-threatening. *Id*. Plaintiff was escorted from the nurse's office without a referral or any pain medication. (Doc. 1, p. 5). He filed a grievance and submitted numerous sick call slips but received no response to them. *Id*.

Several weeks later, Plaintiff met with another unknown nurse ("Jane Doe 2") to discuss his treatment options. (Doc. 1, p. 5). Nurse Doe 2 responded to Plaintiff in the same manner as Nurse Doe 1. *Id*. In addition, she explained that Menard was not responsible for treating the injury because it did not occur at the prison. *Id*. Nurse Doe 2 nevertheless referred Plaintiff to the prison's doctor for further evaluation and provided him with a low dose of ibuprofen for his pain. *Id*. The ibuprofen was ineffective. *Id*.

Plaintiff waited a month to see an unknown doctor ("John Doe 1"). (Doc. 1, p. 6). The doctor ordered an x-ray of Plaintiff's left arm and concluded that he needed surgery. *Id*. However, Doctor Doe 1 informed Plaintiff that surgery would do nothing for him. *Id*.

3

Moreover, because his injury was not life-threatening, the doctor would not refer Plaintiff for further evaluation or treatment with an outside specialist. *Id*. Doctor Doe 1 told Plaintiff that his arm "w[ould] be this way for the rest of [Plaintiff's] life," and he "would just have to deal with it." *Id*.

After Plaintiff filed additional grievances, the prison grievance officer ("Jane Doe 3") referred him for a second appointment with Doctor Doe 1 on or around September 2014. (Doc. 1, p. 6). Doctor Doe 1 referred Plaintiff for an appointment with Doctor Trost. (Doc. 1, pp. 6-7). After examining Plaintiff's arm and reviewing his x-rays, Doctor Trost agreed with Doctor Doe 1. (Doc. 1, p. 7). Doctor Trost informed Plaintiff that nothing could be done for the old injury and that a referral request would likely be denied because his injury was not life-threatening. *Id*. Even so, Doctor Trost submitted a request on Plaintiff's behalf for treatment with an outside specialist. *Id*. The physician who reviewed the request, Doctor Ritz, denied it and recommended additional monitoring and treatment if Plaintiff's symptoms worsened. *Id*.

For nearly a year, Plaintiff complained of additional symptoms and increasing pain in grievances and notes to Doctor Trost. (Doc. 1, p. 7). He explained that his pain medication was ineffective. *Id*. Although he was given a slightly higher dose of pain medication, it still did not work. *Id*. He also complained of increasing left arm numbness, loss of dexterity, and loss of sleep. (Doc. 1, pp. 7-8). Plaintiff was not scheduled for a follow-up appointment and received no response to his written requests for treatment. *Id*.

After citing these symptoms in sick call requests in December 2016 and/or January 2017, Plaintiff was finally scheduled for another appointment with Doctor Trost in January or February 2017. (Doc. 1, p. 8). Doctor Trost ordered another x-ray of Plaintiff's left arm. *Id*. The x-ray revealed a large bony protrusion in his left arm. *Id*. The doctor indicated that his condition had

gotten worse, and he was also suffering from arthritis. *Id*. Doctor Trost explained that Plaintiff's elbow would likely need to be re-broken in order to remove the bony protrusion and reconstruct his arm. *Id*. The doctor submitted another referral request on Plaintiff's behalf. *Id*. Once again, Doctor Ritz denied the request, and Doctor Matticks recommended continued monitoring of Plaintiff's condition. (Doc. 1, p. 8; Doc. 1-1, p. 2). Plaintiff filed a grievance to challenge this decision but received no response. *Id*.

On February 23, 2017, Plaintiff filed an emergency grievance with Warden Jacqueline Lashbrook. (Doc. 1, p. 9). The warden agreed that his situation presented an emergency and referred the matter to Grievance Officer Kelly Pierce for further investigation. (*Id*.; Doc. 1-1, pp. 10-11). Grievance Officer Pierce recommended that the grievance be denied as moot because of Plaintiff's on-going treatment for the injury. *Id*.

Plaintiff filed a second emergency grievance with Warden Lashbrook on March 22, 2017. (Doc. 1, p. 9). He complained about his continued lack of treatment for the same medical issues. *Id*. Warden Lashbrook deemed this grievance to be a non-emergency. (*Id*.; Doc. 1-1, pp. 14-15). Plaintiff's attempts to appeal this decision to the Administrative Review Board were unsuccessful. (Doc. 1, pp. 9-10). Warden Lashbrook also reviewed a third emergency grievance from Plaintiff dated September 12, 2017 and declared it a non-emergency on September 21, 2017. (Doc. 1, p. 21).

On November 20, 2017, Plaintiff filed a fourth emergency grievance to complain about the loss of feeling in his fingers for two days, during which time his arm was stuck in the same position. (Doc. 1, p. 10). Warden Lashbrook again declared the grievance to be a non-emergency. (Doc. 1, pp. 18-19). Nursing Director Holly Hawkin and Medical Director Siddiqui

reviewed Plaintiff's file and scheduled him for a re-evaluation of his left elbow, as well as a possible "ortho consult," on December 7, 2017. (Doc. 1, p. 20).

Plaintiff met with Doctor John Doe 2 on December 12, 2017. (Doc. 1, p. 10). The doctor examined Plaintiff's arm and listened to his complaints of pain, numbness and loss of movement. *Id*. Doctor Doe 2 diagnosed Plaintiff with arthritis. *Id*. Like those before him, Doctor Doe 2 concluded that there was nothing he could do and told Plaintiff to just "deal with it." *Id*. Plaintiff insisted that the large bony protrusion from his left arm was the source of his problem, and he requested a referral to an outside specialist. *Id*. The doctor denied Plaintiff's request for a referral to an outside specialist and also denied his request for more pain medication. *Id*. He told Plaintiff to wait until he was released from prison to meet with and pay for his own doctor. *Id*. Upon subsequent review of the matter on January 18, 2018, Nursing Director Hawkin and Medical Director Siddiqui concluded that Plaintiff's "issues" were being addressed. (Doc. 1-1, p. 5).

## **Discussion**

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claims in Plaintiff's *pro se* Complaint into the following counts:

> **Count 1 -** Defendants exhibited deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment when they denied Plaintiff adequate medical treatment for injuries related to an old gunshot wound in his left arm.
>
> **Count 2 -** Defendants violated Plaintiff's right to due process of law under the Fourteenth Amendment when they mishandled grievances regarding his allegedly inadequate medical care.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

### Preliminary Matters

As an initial matter, the Court has considered whether the claims and defendants are properly joined in a single action. *See* FED. R. CIV. P. 18-20. Plaintiff's claims arose at Menard during separate encounters with the defendants over the course of 4 years. At this stage, it appears that the claims against each defendant arose during a series of related transactions and/or occurrences and involve common questions of law or fact. Therefore, the Court finds that joinder is proper. FED. R. CIV. P. 18, 20. This issue is subject to reconsideration as the case proceeds. *Plaintiff is warned that the Court may exercise its discretion and dismiss or sever improperly joined parties or claims at any time the Court deems it appropriate to do so.* FED. R. CIV. P. 21.

The Court also notes that some portion of Plaintiff's claims may be time-barred under the applicable statute of limitations. "The limitations period for § 1983 claims is based in state law, and the statute of limitations for § 1983 actions in Illinois is two years." *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015) (citing *Moore v. Burge*, 771 F.3d 444, 446 (7th Cir. 2014); *Wallace v. Kato*, 549 U.S. 384, 387 (2007)). Dismissal based on untimeliness is appropriate only when the statute of limitations defense is obvious from the face of the pleadings. *Jones v. Bock*, 549 U.S. 199, 214-215 (2007); *see Walker v. Thompson*, 288 F.3d 1005, 1009-10 (7th Cir. 2002) (dismissal is appropriate "when the existence of a valid affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous"). Given the on-going nature of Plaintiff's claims in this case, the Court will allow this

matter to proceed against all of the defendants identified below. However, the Court may consider this defense further upon the receipt of a properly filed motion by a defendant.

## Claims Subject to Further Review

### Count 1

The Eighth Amendment prohibits the cruel and unusual punishment of inmates. U.S. CONST. Amend. VIII. It safeguards inmates against a lack of medical care that may result in pain and suffering which no one suggests would serve any penological purpose. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009). Prison officials violate the Eighth Amendment when they exhibit deliberate indifference to an inmate's serious medical needs. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citing *Estelle*, 429 U.S. at 104).

An Eighth Amendment claim based on the denial of medical care includes an objective and a subjective component. In order to satisfy the objective component, a prisoner must demonstrate that his medical condition is objectively, sufficiently serious. *Arnett*, 658 F.3d at 750; *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A medical condition is considered objectively serious if it has been diagnosed by a physician as requiring treatment or the need for treatment would be obvious to a layperson. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009)). Here, Plaintiff's left elbow injuries, which resulted from an old gunshot wound, are sufficiently serious to support an Eighth Amendment claim at screening. *See, e.g., Beauford v. Mesrobian*, 202 F.3d 272, at *2 (7th Cir. 1999) (unpublished) (old gunshot wound that leaked puss and blood and caused pain were sufficiently serious to survive summary judgment); *Hammond v. Rector*, No. 12-cv-00737-JPG-PMF, 2014 WL 3709466 (S.D. Ill. 2014)

(noting that nerve damage and pain resulting from an old gunshot wound were objectively serious).

To satisfy the subjective component of this claim, the plaintiff must demonstrate that each defendant acted with a "sufficiently culpable state of mind," which is deliberate indifference in this case. *Farmer*, 511 U.S. at 834; *Greeno*, 414 F.3d at 653. Deliberate indifference is shown where a defendant "know[s] of and disregard[s] an excessive risk to inmate health." *Greeno*, 414 F.3d at 653. As discussed below, the Complaint sets forth sufficient allegations to satisfy this standard for screening purposes against the prison physicians (John Doe 1, John Doe 2, and Doctor Trost), nurses (Jane Doe 1 and Jane Doe 2), medical administrators (Holly Hawkin, Doctor Siddiqui, Doctor Matticks, and Doctor Ritz), and grievance officials (Jane Doe 3, Kelly Pierce, and Jacqueline Lashbrook). However, the allegations do not support a claim against John Doe 3 or Wexford.

1. **Physicians**

The Complaint states a deliberate indifference claim against Doctors John Doe 1, John Doe 2, and Trost. Although each of these physicians met with Plaintiff to discuss his old gunshot wound, residual injuries, presenting symptoms and treatment options, they ultimately failed to take any meaningful steps to treat him. They explained that his injury was not life-threatening and that surgery would be expensive and possibly ineffective. It is unclear why they denied him effective doses of pain medication.

The "receipt of some medical care does not automatically defeat a claim of deliberate indifference." *Perez*, 792 F.3d at 777 (citing *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007)); *Arnett*, 658 F.3d at 751 (prisoner need not show that his medical needs were literally ignored). The standard is satisfied if the physician "delays a prisoner's treatment for non-

medical reasons, thereby exacerbating his pain and suffering." *Perez*, 792 F.3d at 777 (citing *Arnett*, 658 F.3d at 753; *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). Time and again, these defendants delayed Plaintiff's referral to an outside specialist for further evaluation and treatment for reasons, such as cost, that were non-medical in nature. On this facts, the Court cannot dismiss the deliberate indifference claim in Count 1 against Doctors John Doe 1, John Doe 2, and Trost.

### 2. Nurses

The Complaint also articulates a colorable deliberate indifference claim against Nurses Jane Doe 1 and Jane Doe 2. Although "nurses may generally defer to instructions given by physicians, they have an independent duty to ensure that inmates receive constitutionally adequate care." *Perez*, 792 F.3d at 779 (7th Cir. 2015) (citing *Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010)). When confronted with a questionable practice or clearly inappropriate treatment, a nurse has a professional obligation to "take appropriate action" by discussing the nurse's concerns with the treating physician or contacting a supervisor. *Id*. Here, both nurses told Plaintiff that they could do nothing for him, without discussing the matter with a physician. Nurse Jane Doe 1 turned Plaintiff away without any treatment at all, and Nurse Jane Doe 2 provided him with a low dose of ineffective pain medication. Given these allegations, Count 1 survives screening against Nurses Jane Doe 1 and Jane Doe 2.

### 3. Medical Administrators

Plaintiff also named as defendants those administrators who were responsible for reviewing and approving requests for outside treatment with a surgeon, including Holly Hawkin, Doctor Siddiqui, Doctor Matticks, and Doctor Ritz. A medical administrator who stalls in authorizing a referral to an outside surgeon may be deliberately indifferent. *See McGowan*, 612

F.3d at 641 (plaintiff stated plausible claim of deliberate indifference against administrator who delayed referral to outside surgeon). A delay in treatment may rise to the level of deliberate indifference where it causes further injury or unnecessary pain. *Id*. at 640. "Even a few days' delay in addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference." *Perez*, 792 F.3d at 781 (quoting *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012)). Plaintiff maintains that the delay in treatment resulted in years of unnecessary pain and loss of left arm movement and dexterity. Count 1 will therefore receive further review against the medical administrators.

### 4. Grievance Officials

A government official is generally liable under § 1983 for his or her own misconduct. *Locke v. Hoessig*, 788 F.3d 663, 669 (7th Cir. 2015). That means a § 1983 plaintiff cannot rely on a theory of *respondeat superior*, or supervisory liability, when bringing a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). He must allege facts which suggest that the government official realized a substantial risk of serious harm to the prisoner existed and still disregarded it. *Farmer*, 511 U.S. at 837.

Written correspondence may provide sufficient knowledge of a constitutional deprivation in this context. *See Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996) ("[A] prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition."). *See also Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Where an official "knows about unconstitutional conduct and facilitates, approves, condones, or 'turn[s] a blind eye' to it," the official may be liable for deliberate indifference under the Eighth

11

Amendment. *Perez*, 792 F.3d at 768 (citing *Vance*, 97 F.3d at 992-93 (quoting *Gentry*, 65 F.3d at 561)). Plaintiff's Complaint states a claim against the grievance officials under this standard. Accordingly, Count 1 shall receive further review against Jane Doe 3, Kelly Pierce and Warden Lashbrook.

### Claims Subject to Dismissal

### Count 2

The Complaint fails to state an independent Fourteenth Amendment due process claim against any of the defendants based on their alleged mishandling of Plaintiff's grievances. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Therefore, Count 2 does not survive preliminary review and will be dismissed with prejudice against all of the defendants.

### Parties Subject to Dismissal

The allegations in the Complaint also fail to support claims against Wexford, Inc. and John Doe 3. Wexford is a private medical corporation that provides medical services and staff at prisons in Illinois, including Menard. In the Seventh Circuit, a private corporation generally cannot be held liable under § 1983, unless it maintained an unconstitutional policy or custom. *Perez*, 792 F.3d at 780 (citing *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2014)). Plaintiff fails to identify any policy or practice espoused by Wexford that resulted in the denial of his medical care. Thus, Count 1 cannot proceed against this defendant and will be dismissed without prejudice.

Plaintiff named John Doe 3 as a defendant in the case caption and list of defendants, but did not mention this defendant in the statement of his claim. Merely invoking the name of a

potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."). Therefore, Count 1 will also be dismissed without prejudice against John Doe 3.

### Identification of Unknown Defendants

Plaintiff will be allowed to proceed with Count 1 against Defendants Nurse Jane Doe 1, Nurse Jane Doe 2, Nurse/Grievance Officer Jane Doe 3, Doctor John Doe 1, and Doctor John Doe 2. However, these defendants must be identified with particularity before service of the Complaint can be made on them. Where a prisoner's Complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez*, 577 F.3d at 832. In this case, Warden Lashbrook is already named as a defendant in her individual and official capacity, and the warden (acting in her official capacity) shall be responsible for responding to discovery aimed at identifying these unknown defendants. Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of Defendants Nurse Jane Doe 1, Nurse Jane Doe 2, Nurse/Grievance Officer Jane Doe 3, Doctor John Doe 1, and Doctor John Doe 2 are discovered, Plaintiff shall file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the Complaint.

### Pending Motions

Plaintiff filed a Motion to Appoint Counsel (Doc. 4), which shall be **REFERRED** to a United States Magistrate Judge for a decision.

Plaintiff's request for a preliminary injunction in the Complaint shall also be designated as a Motion for Preliminary Injunction in CM/ECF and **REFERRED** to a United States Magistrate Judge for handling as soon as practicable.

**Disposition**

The Clerk is **DIRECTED** to **ADD** a Motion for Preliminary Injunction in CM/ECF, based on Plaintiff's request for this relief in the Complaint. (Doc. 1, p. 12). Warden Jacqueline Lashbrook (acting in her official capacity) shall be responsible for implementing any injunctive relief that is ordered in this case and for responding to discovery aimed at identifying the unknown defendants.

**IT IS ORDERED** that **COUNT 1** survives screening and shall receive further review against Defendants **JACQUELINE LASHBROOK (in her individual and official capacities), DR. TROST, DR. RITZ, R. MATTICKS, HOLLY HAWKIN, KELLY PIERCE, DR. SIDDIQUI, JANE DOE 1 (nurse), JANE DOE 2 (nurse), JANE DOE 3 (nurse/grievance officer), JOHN DOE 1 (doctor),** and **JOHN DOE 2 (doctor).** This claim is **DISMISSED** without prejudice against Defendant **JOHN DOE 3 (doctor)** and **WEXFORD, INC.** because the Complaint fails to state a claim against these defendants for relief.

**IT IS ORDERED** that **COUNT 2** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted against the defendants.

**IT IS ORDERED** that as to **COUNT 1**, the Clerk of Court shall prepare for Defendants **JACQUELINE LASHBROOK (individual and official capacities), DR. TROST, DR. RITZ, R. MATTICKS, HOLLY HAWKIN, KELLY PIERCE, DR. SIDDIQUI,** and, once identified, **JANE DOE 1 (nurse), JANE DOE 2 (nurse), JANE DOE 3 (nurse/grievance officer), JOHN DOE 1 (doctor),** and **JOHN DOE 2 (doctor):** (1) Form 5 (Notice of a Lawsuit

and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on Defendants Nurse Jane Doe 1, Nurse Jane Doe 2, Nurse/Grievance Officer Jane Doe 3, Doctor John Doe 1, and Doctor John Doe 2 until such time as Plaintiff has identified them by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Reona J. Daly** for further pre-trial proceedings, including handling of the following pending matters: (1) Motion to Appoint of Counsel (Doc. 4); (2) Motion for Preliminary

Injunction; and (3) a plan for discovery aimed at identifying the unknown defendants with particularity. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Daly** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 5, 2018**

                                               **s/ STACI M. YANDLE**
                                               **District Judge**
                                               **United States District Court**